

**SO ORDERED.**

**SIGNED this 12 day of October, 2006.**

_____
**JANICE MILLER KARLIN**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | ) |
| | ) |
| **GARY BRUCE LANTER** | ) |
| **d/b/a NEK CARRIERS, LLC,** | )　　**Case No. 05-40435** |
| | )　　**Chapter 13** |
| Debtor. | ) |
| | ) |

### MEMORANDUM OPINION AND ORDER FINDING
### THAT THE AUTOMATIC STAY IS STILL IN EFFECT

This matter is before the Court on the Motion of Debtor, Gary Bruce Lanter, for

Determination that the Automatic Stay is Still in Effect.[1] Debtor is seeking a determination that the

automatic stay did not lapse as to creditor, Transport Funding, LLC, pursuant to an earlier agreement

reached between Debtor and Transport Funding. The parties have submitted Stipulations of Fact[2]

and briefs on this issue, and the Court is now ready to rule. This Court has jurisdiction over this

---

[1]Doc. 115.

[2]Doc. 132.

contested matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## I.     FINDINGS OF FACT

Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 1, 2005.  Both prior to and after the filing of the petition, Debtor had in his possession a 1999 Freightliner, which was used as an over the road truck to generate income to assist Debtor in making his Chapter 13 plan payments.  Creditor Transport Funding, LLC ("Transport Funding") had a secured interest in that 1999 Freightliner by virtue of the Security Agreement executed contemporaneously with, and as part of, a Conditional Sale Contract.  The Security Agreement provides that Transport Funding is to be named as the loss payee on all insurance policies covering the 1999 Freightliner, and also states that "Debtor assigns to [Transport Funding] all proceeds of any physical damage . . . which is maintained by Debtor in accordance herewith . . . up to the amount owing hereunder by Debtor.  Debtor directs all insurers to pay such proceeds solely to the order of [Transport Funding] for application to Debtor's indebtedness to [Transport Funding]."  Transport Funding's security interest was perfected by notation of the security interest on the certificate of title and the title and registration application for the 1999 Freightliner.

Debtor filed a Chapter 13 plan on March 15, 2005; it proposed to pay Transport Funding $30,000 through the plan for the 1999 Freightliner.  Transport Funding filed an Objection to Debtor's Plan and a Motion for Adequate Protection and for Modification of the Automatic Stay, alleging the value of the 1999 Freightliner was actually $37,500.  The parties later agreed that the value of the 1999 Freightliner to be paid through the plan was $35,000.  On July 7, 2005, the Court

2

entered an Agreed Order for Adequate Protection and for Modification of the Automatic Stay as to

Transport Funding, LLC Against 1999 Freightliner ("Agreed Order").[3]

As a condition of Transport Funding withdrawing its Objection to Debtor's Chapter 13 plan

and Motion for Adequate Protection and for Modification of the Automatic Stay, the Agreed Order

conditioned the continuation of the automatic stay upon Debtor's compliance with certain

conditions.  One of the conditions required that "Debtor shall, at all times, remain current in the

payments to the Chapter 13 Trustee's office pursuant to the currently filed Chapter 13 Plan and any

amended plan filed by Debtor."  The Agreed Order further provides that

> "... if Debtor defaults in any provision of this Order, [Transport Funding] shall give Debtor
> and Debtor's attorney notice of such default by certified mail, return receipt requested.
> Debtor will then have ten (10) days after the mailing of such notice to cure such default.  If
> Debtor fails to cure the defaults within the 10-day period, the automatic stay will lift thereby
> allowing [Transport Funding] to proceed against the Collateral under applicable law and to
> repossess the Collateral and to foreclose its security interest in the Collateral, non-judicially
> or judicially."

After the entry of the Agreed Order, the 1999 Freightliner was damaged in a fire on June 8,

2006. On June 12, 2006, Debtor made a claim for the damage to the 1999 Freightliner to Great

American Insurance Company.  Transport Funding was not notified of Debtor's insurance claim.

On or about June 13, 2006, Debtor obtained an estimate for the repair of the 1999 Freightliner, but

again did not notify Transport Funding of the repair estimates.  The 1999 Freightliner was repaired

in Texas by ATC Freightliner between June 13, 2006 and July 1, 2006.  A check dated June 21, 2006

issued by Great American Insurance Company in the amount of $6,856.90, the proceeds for the fire

damage to the 1999 Freightliner, was made jointly payable to "ATC Freightliner and Transport

Funding."  The check bears the address of ATC Freightliner and was mailed directly to ATC

---

[3]Doc. 44.

3

Freightliner. The check was deposited, presumably by ATC Freightliner, with only one endorsement, that of Randy Stone, an employee of ATC Freightliner. The check was deposited without notice to Transport Funding, and without their endorsement, approval, or consent.

Debtor made no plan payments between May 23, 2006 and August 29, 2006, which constitutes a default under the Agreed Order. On July 11, 2006, the Chapter 13 Trustee filed a Motion to Dismiss, alleging default in plan payments of $4,200.00. Debtor filed an objection to the Trustee's Motion to Dismiss on August 2, 2006, and on August 4, 2006, Debtor filed a Motion for Abatement of Plan Payments. In that Motion to Abate, Debtor admitted that he was delinquent for three months of plan payments.

The Motion to Abate was accompanied by a notice that provided creditors twenty days to object. No objections were filed and an order granting the Motion for Abatement of Plan Payments was entered September 15, 2006.

On August 9, 2006, Transport Funding sent certified letters to Debtor and his counsel, providing notice of the default as set forth in the Agreed Order. The arrearage payments were not paid within 10 days of the notice of default. However, within the ten days following the notice of default, a Motion for Determination that the Stay was still in effect was filed, to which Transport Funding timely objected. An order denying the Trustee's Motion to Dismiss was entered on September 12, 2006.

## II.     CONCLUSIONS OF LAW

The issue before the Court is whether the automatic stay imposed by 11 U.S.C. § 362 is still in effect as to the 1999 Freightliner or if the stay has been terminated as a result of the terms of the Agreed Order entered by the Court on July 7, 2005. In order for the automatic stay to terminate

4

under the terms of that order, three conditions must be met.  First, Debtor must have defaulted on some provision in the Agreed Order.  Second, Transport Funding must have provided notice to Debtor of such default, according to the terms and conditions in the Agreed Order.  Third, Debtor must have failed to cure the default within 10 days after the notice of default.

The parties have stipulated that the first two conditions were met:  the Debtor defaulted by way of failing to make his Chapter 13 plan payments for a period of three months, and Transport Funding properly notified the Debtor of this default.  The only issue in dispute is whether Debtor's motion to abate the plan payments constitutes an effective cure of the default.  Based upon the facts of this case, the Court holds that it does.

Transport Funding claims that the abatement of the plan payments cannot constitute a cure under the Agreed Order because "[t]he Agreed Order clearly does not provide for abatement as a means of curing default under the terms of the agreement."  Although Transport Funding is correct that the Agreed Order does not provide for abatement as a means of cure, the opposite is true as well.  Nothing in the Agreed Order provides that abatement does not qualify as a means of cure.  In fact, the Agreed Order is completely silent as to what methods Debtor may employ to cure any default.

Transport Funding is apparently taking the approach that through its silence, the Agreed Order implicitly requires that a default in plan payments can only be cured by full payment of the missed plan payments within 10 days.  Transport Funding states in its brief "[i]f Debtor wanted abated payments not to constitute a default under the terms of the Agreed Order, he should have attempted to negotiate that term into the Order."  Ideally that would have been the best situation for Debtor.  However, the converse is also true.  If abatement was not to constitute a cure, Transport Funding could also have provided for such a restriction in the agreement.  The Agreed Order does

5

not provide such a restriction on Debtor, and the Court is not willing to read such a restriction into the Agreed Order when it is clearly silent on the matter.

The Court finds that the abatement of the plan payments constitutes a cure of the default in this case. The term "abatement" is defined as "[t]he act of eliminating or nullifying."[4] By abating the missed payments, the Debtor in effect eliminated those payments and they became a nullity. The missed payments are treated as though they never existed. Once these payments were abated, the Debtor was no long in default under the Chapter 13 plan, as he was considered current in all plan payments and the motion to dismiss was denied. Based on this finding, the Court finds Debtor cured the default under the Agreed Order.

The Court realizes that the order granting the abatement was not entered within 10 days of the notice of default, but notes that Debtor had done everything in his ability to abate the payments by that time. The fact that Debtor was required by court rules and notions of due process to allow creditors, including Transport Funding, twenty days to object to the abatement will not be held against Debtor. Because the motion to abate was filed prior to the expiration of the ten day period, the Court finds Debtor had complied with the requirements of the Agreed Order.

Transport Funding also claims that "[u]nder Debtor's proposed construction of the Agreed Order, he would be allowed to miss multiple plan payments without those missed payments constituting a default under the terms of the Agreed Order." The Court disagrees. First, abating the payments constitutes a cure to a default, not a finding that no default ever took place to begin with. Second, the Agreed Order provides that Debtor is only allowed to cure two defaults, and that the automatic stay terminates without the option of curing following a third default by Debtor.

---

[4]Black's Law Dictionary (8th ed. 2004).

The Court also finds that Transport Funding's actions, or inaction, also bars them from contending that the abatement of the payments did not constitute a cure under the Agreed Order. The Debtor filed his motion to abate payments on August 4, 2006, and Transport Funding had until August 24 to object to that motion. On August 9, 2006, Transport Funding notified Debtor of the default and demanded that Debtor cure the default. On August 18, 2006, Debtor filed his motion for a determination that the automatic stay was still in effect, wherein he claimed that he was intending to cure the default by abating the plan payments. Transport Funding was thus on notice as of August 18, 2006, that Debtor intended to cure the default by abating the plan payments. However, at no time did Transport Funding object to the motion to abate the plan payments, despite clear notice that was Debtor's intention.

The Court will not allow Transport Funding to sit silently while Debtor does all that he can to get a Court ruling on this matter, only to then come in at a later date and claim that Debtor's chosen method of curing the default was ineffective. If Transport Funding objected to the abatement of the payments as a manner of curing the default, it had ample opportunity to object to the abatement so the Court could timely decide that issue.

Transport Funding also claims that Debtor has breached another agreement. Transport Funding raises the issue concerning the payment of the insurance proceeds directly to ATC Freightliner despite a requirement that all insurance proceeds be assigned to Transport Funding. Transport Funding appears to raise this in an effort to show that if the Court were to allow the abatement of the payments to constitute a cure, combined with the apparent loss of the insurance proceeds, that Transport Funding is no longer adequately protected. If that is the case, Transport Funding is free to file a new motion for adequate protection or termination of the automatic stay.

7

The Court believes Transport Funding, through the medium of the Agreed Order, was trying to ensure that it remained adequately protected in this case. By holding that Debtor cured its default with Transport Funding with the abatement, the Court does not bar Transport Funding from pursuing a motion for adequate protection at this time. However, if Transport Funding remains adequately protected despite the abated plan payments and the direct payment of the insurance proceeds to ATC Freightliner, the Court is not willing to hold that the automatic stay terminated merely because the method of cure was abatement, instead of payment.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Debtor's Motion for Determination that the Automatic Stay is Still in Effect is granted. The automatic stay remains in effect in regard to the 1999 Freightliner in which Transport Funding has a security interest. This order is without prejudice to Transport Funding seeking relief from the stay on the basis that Debtor's alleged misuse of the insurance proceeds, or from abating payments, has rendered it inadequately protected.

###